# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors[1], | ) | (Jointly Administered) |
| | ) | |
| ─────────────────── | ) | |
| | ) | |
| BLACKJEWEL, L.L.C., BLACKJEWEL HOLDINGS L.L.C., REVELATION ENERGY HOLDINGS, LLC, REVELATION MANAGEMENT CORPORATION, REVELATION ENERGY, LLC, DOMINION COAL CORPORATION, HAROLD KEENE COAL CO. LLC, VANSANT COAL CORPORATION, LONE MOUNTAIN PROCESSING, LLC, POWELL MOUNTAIN ENERGY, LLC, and CUMBERLAND RIVER COAL LLC, | ) | Adv. Proceeding No. 3:20-ap-03008 |
| Plaintiffs, | ) | |
| v. | ) | |
| CLEARWATER INVESTMENT HOLDINGS, LLC, | ) | |
| and | ) | |
| JEFFERY A. HOOPS, SR., | ) | |
| Defendants. | ) | |

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at P.O. Box 1010, Scott Depot, West Virginia 25560.

## FIRST AMENDED ADVERSARY COMPLAINT

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), as plaintiffs in the above-captioned adversary proceeding ("Plaintiffs"), for their first amended adversary complaint ("Complaint") against Clearwater Investment Holdings, LLC ("Clearwater") and Jeffery A. Hoops, Sr. ("Hoops"), state and allege as follows.

### Nature of the Case

1. This is an action to avoid certain payments and transactions by Debtors as constructively fraudulent transfers pursuant to sections 544, 547, 548, and 550 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and applicable state law, to recharacterize certain payments ostensibly made for repayment of debt as improper equity distributions while the Debtors were insolvent, and for breach of fiduciary duty concerning such payments and transactions.

### Jurisdiction and Venue

2. This adversary proceeding arises out of and is related to the above-captioned bankruptcy cases pending before the Court. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Plaintiffs consent to entry of final judgment in the Bankruptcy Court.

### Parties

3. Blackjewel, L.L.C. ("Blackjewel") and the other Plaintiffs are debtors and debtors-in-possession in the above-captioned chapter 11 cases. On July 1, 2019 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions in this Court.

4. Hoops is a natural person and is the former President and Chief Executive Officer of Blackjewel. Hoops was an officer and director of certain other of the Debtors at various times.

5. Clearwater is, on information and belief, a limited liability company whose members are Patricia A. Hoops and the Clearwater Trust ("CW Trust"). Patricia A. Hoops is Hoops' wife. The CW Trust purports to be a trust created by Hoops for the benefit of himself and members of his family. Hoops is a grantor and beneficiary of the CW Trust. Hoops' family members are the other trustees of the CW Trust.

**Allegations Common to All Claims**

6. The Debtors maintained bank accounts with United Bank.

7. Hoops and Clearwater also maintained various accounts at United Bank.

**PURPORTED "LINE OF CREDIT" TRANSACTIONS**

8. In the months preceding the Debtors bankruptcy filings, the Debtors paid tens of millions of dollars to Clearwater and Hoops, including through transfers of funds between accounts maintained at United Bank. On information and belief, based on an analysis of the records available to the Debtors, from January 1, 2019 until the Debtors' bankruptcy filings in July of 2019, Clearwater received in excess of $34 million in payments from the Debtors.

9. On information and belief, based on an analysis of the records available to the Debtors, from January 1, 2019 until the Debtors' bankruptcy filings in July 2019, Hoops received approximately $7.7 million in payments from the Debtors.

10. Hoops directed the payments between the Debtors and Clearwater. Similarly, Hoops directed the payments between the Debtors and himself.

11. Hoops and Clearwater contend that the payments by the Debtors to Hoops and Clearwater were repayments made pursuant to "revolving line[s] of credit" provided to the Debtors. No loan agreements or other instruments exist establishing any such line of credit by

Clearwater or Hoops to the Debtors.

12. Although amounts advanced by Clearwater and Hoops to the Debtors were sometimes referred to as loans, including in proceedings in the Debtors' bankruptcy cases shortly after the Petition Date while Hoops remained CEO, the label applied to the advances and to the transfers by Debtors to Clearwater and Hoops is not determinative of their proper treatment. Based on the Debtors' analysis, and based on the substance of the transactions, the advances by Clearwater and Hoops were and should be considered equity contributions and the payments by Debtors to Clearwater and Hoops were and should be considered distributions on account of equity.

13. There was no security for repayment of the amounts advanced by Clearwater or Hoops under the claimed lines of credit.

14. There was no fixed maturity date or schedule of repayments of the amounts advanced by Clearwater or Hoops to Debtors.

15. The Debtors were inadequately capitalized at both the time of advances by Clearwater and Hoops and the time of the payments by the Debtors to Clearwater and Hoops. The Debtors had no practical ability to obtain financing from outside lenders at both the time of advances by Clearwater and Hoops and the time of the transfers by the Debtors to Clearwater and Hoops.

16. According to Hoops and Clearwater, advances under the claimed revolving lines of credit occurred because "no lenders were willing to provide any financing to Debtors." No independent third-party lender would make a loan to Debtors on terms consistent with the terms alleged to govern the advances made by Clearwater and Hoops.

17. The Debtors had no clear source of repayment of amounts advanced by Clearwater

and Hoops. There was no specific fund or source of funds for such repayment.

18. The Debtors were insolvent at the time of the transfers to Clearwater and Hoops regarding the claimed lines of credit. At the time of the transfers to Clearwater and Hoops, the Debtors' assets were unreasonably small for the business in which they were engaged or would engage. At the time of the transfers to Clearwater and Hoops, Hoops, Clearwater, and the Debtors either knew or reasonably should have believed that the Debtors would incur debts beyond Debtors' ability to pay as they became due.

19. Hoops' direction of the Debtors' payments to Clearwater and himself under the foregoing circumstances was inequitable and improper. The payment of tens of millions of dollars to Clearwater and to himself for distributions on account of equity are improper and harmed the Debtors and their ability to satisfy obligations to creditors. The Debtors are entitled to recover from Clearwater the approximately $34 million of pre-petition payments by Debtors to Clearwater. Similarly, the Debtors are entitled to recover from Hoops the approximately $7.7 million of pre-petition payments by the Debtors to Hoops.

**RIVERSTONE SECURED CREDIT FACILITY**

20. On or around July 17, 2017, Blackjewel obtained a secured loan (the "July 2017 Loan") pursuant to a certain Credit Agreement, dated as of July 17, 2017 between Blackjewel, as borrowers, and certain lenders, with Riverstone Credit Partners – Direct, L.P. as agent, and related loan and security documents (the "Riverstone Facility"). The July 2017 Loan was in the original principal amount of $34 million but at least $3 million of that amount was not new money loaned to Blackjewel.

21. Rather, $3 million of the principal amount of the July 2017 Loan consisted of amounts that Hoops claimed to be owed by Blackjewel previously. That alleged $3 million obligation was rolled into the July 2017 Loan made pursuant to the Riverstone Facility without

Hoops providing any new funds or loan to Blackjewel (the "Hoops-Riverstone Participation"). Because the Hoops-Riverstone Participation was included in the July 2017 Loan, it was secured by various assets of Blackjewel as provided by the terms of the Riverstone Facility. The effect of the Hoops-Riverstone Participation was to grant Hoops a security interest under the Riverstone Facility securing $3 million of alleged obligations to Hoops that were not previously secured pursuant to the terms of the Riverstone Facility.

22. Additionally, Hoops caused Blackjewel to pay him approximately $4,956,798 of the new funds from the July 2017 Loan related to amounts Hoops claimed to be owed for prior obligations (the "Hoops-Riverstone Payment"). The funds borrowed by Blackjewel to pay Hoops the Hoops-Riverstone Payment had the effect of creating a secured obligation for the amount of the Hoops-Riverstone Payment pursuant to the terms of the Riverstone Facility.

23. The Debtors' repaid the July 2017 Loan subject to the right to challenge amounts ostensibly owed to Hoops for the Hoops-Riverstone Participation. The funds for repayment of the Hoops-Riverstone Participation remain on deposit in the Court's registry of funds and are subject to the continuing jurisdiction of the Court.

**OTHER SELF-DEALING REGARDING LOAN AND REPAYMENT ACTIVITY**

24. On information and belief, Hoops received approximately $5.7 million from the Debtors in December of 2017 purportedly to repay funds advanced by him under a 2012 line of credit. Debtors' ongoing investigation has not identified any written agreement regarding the 2012 line of credit or any documentation regarding the terms purportedly governing it.

25. General ledger entries in the Debtors' accounting records suggest other financial transactions between Hoops and the Debtors for which there are either no or inadequate records to substantiate the nature or legitimacy of the transactions.

26. Debtors' records do not reflect disinterested approval or authorization for the $5.7

payment to Hoops in December 2017 or the other transactions suggested by the Debtors' accounting records. Debtors' investigation has not identified documents where Hoops sought disinterested approval from the board of Blackjewel or any other Debtor for the self-dealing transactions in which he engaged.

**COUNT ONE**
**(Recharacterization of Alleged Debt and**
**"Line of Credit" Payments to Clearwater and Hoops)**

27. The Debtors incorporate each and every allegation contained in paragraphs 1 through 26 of this Complaint as if fully rewritten herein.

28. The advances to the Debtors by Clearwater and Hoops in 2019 pursuant to purported lines of credit should properly be considered as, and in substance were, equity contributions rather than loans or advances of credit. The payments by Debtors to Clearwater and Hoops should properly be considered as, and in substance were, improper distributions on account of equity rather than repayment of debt.

29. On information and belief, the payment of approximately $5.7 million to Hoops in December 2017 purportedly on account of a 2012 line of credit (the "2017 LOC Payment") should properly be considered as, and in substance was, an improper distribution on account of equity rather than repayment of debt. The absence of a written agreement for the 2012 line of credit to which the 2017 LOC Payment purportedly related, the absence of specific or definitive terms, and the lapse of time all indicate that the 2017 LOC Payment should properly be considered an equity distribution.

30. The Court has the power to recharacterize the advances made by Clearwater and Hoops to the Debtors under claimed but undocumented revolving lines of credit in 2019, as well as advances in connection with the 2017 LOC Payment, and to order that the advances and participation be treated as equity contributions, including but not limited to, pursuant to 11 U.S.C.

§ 105 and 11 U.S.C. § 726.  Likewise, the Court has the power to recharacterize the payments by Debtors to Clearwater and Hoops, including the payments in 2019 and the 2017 LOC Payment, and to order that they be treated as distributions on account of equity rather than repayment of debt.

31. Recharacterization is appropriate under the facts and circumstances applicable to the advances by Clearwater and Hoops and repayments by the Debtors in 2019.  On information and belief, based on all the known facts and circumstances, recharacterization is appropriate for the 2017 LOC Payment.

32. Under all the facts and circumstances, the Court should declare and otherwise order that amounts advanced by Clearwater and Hoops to Debtors in 2019 in substance were, and should be considered as, equity contributions.  Under all the facts and circumstances, the Court should declare and otherwise order that amounts paid by Debtors to Clearwater in 2019 in substance were, and should be considered as, distributions on account of equity and not repayment of debt.  On information and belief, based on all the known facts and circumstances, the Court should declare and otherwise order that the 2017 LOC Payment in substance was, and should be considered as, a distribution on account of equity and not repayment of debt.

33. The payments by Debtors to Clearwater and Hoops for equity distributions were improper and are recoverable by the Debtors.  The distributions were made at a time the Debtors were insolvent and were not able to pay their debts as they became due in the usual course of business.  The Court can and should order Clearwater and Hoops to repay the amounts transferred by Debtors for repayment of the claimed but undocumented revolving lines of credit in 2019.  The Court can, and on information and belief should, order Clearwater and Hoops to repay the 2017 LOC Payment.

## COUNT TWO
### (To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 548 – Against Clearwater and Hoops)

34. The Debtors incorporate each and every allegation contained in paragraphs 1 through 33 of this Complaint as if fully rewritten herein.

35. Each payment or transfer by the Debtors to Clearwater and Hoops on account of the claimed revolving lines of credit (each a "Transfer" and sometimes collectively the "Transfers") was a transfer of an interest of the Debtors in property.

36. The Debtors' agreement to the Hoops-Riverstone Participation and the resulting security interest were obligations incurred by the Debtors, which are included in the definition of "Transfer" and "Transfers" for purposes of the allegations of this Complaint.

37. The Debtors did not receive reasonably equivalent value for any of the Transfers. The payment Transfers were in substance, and should be considered, distributions to Clearwater and Hoops on account of equity and the Debtors did not receive value in exchange for such payments.

38. On information and belief, the Debtors did not receive reasonably equivalent value for the 2017 LOC Payment and it was in substance, and should be considered, a distribution to Hoops on account of equity. Based on these allegations, the 2017 LOC Payment is included in the definition of "Transfer" and "Transfers" for purposes of the subsequent allegations of this Complaint.

39. At the time of each Transfer, the Debtors were: (a) insolvent, or rendered insolvent as the result of the Transfer; (b) engaged in business or a transaction, or were about to engage in business or a transaction, for which the Debtors' remaining property was an unreasonably small

capital; and/or (c) the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

40. Each Transfer can and should be avoided as a constructively fraudulent transfer. The Debtors are entitled to, and the Court should enter, judgment against Clearwater avoiding each Transfer received by Clearwater pursuant to section 548 of the Bankruptcy Code. The Debtors are entitled to, and the Court should enter, judgment against Hoops avoiding each Transfer received by Hoops pursuant to section 548 of the Bankruptcy Code.

41. Each Transfer can and should be avoided as to Clearwater and as to any subsequent transferee. Each Transfer can and should be avoided as to Hoops and as to any subsequent transferee.

**COUNT THREE**
**(To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 544 and the West Virginia Uniform Fraudulent Transfers Act – Against Clearwater and Hoops)**

42. The Debtors incorporate each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully rewritten herein.

43. Each Transfer also can and should be avoided pursuant to section 544 of the Bankruptcy Code and applicable state law. Pursuant to section 544(b) of the Bankruptcy Code, the Debtors (as debtors-in-possession) have the rights of existing unsecured creditors. Section 544(b) permits the Debtors to assert claims and causes of action that such a creditor could assert under applicable state law.

44. Each of the Transfers can and should be avoided pursuant to West Virginia law. Debtors did not receive reasonably equivalent value for any of the Transfers. The payment Transfers were in substance, and should be considered, distributions on account of equity

contributions by Clearwater and Hoops and the Debtors did not receive value in exchange for such transfers.

45. At the time of each Transfer, the Debtors were insolvent, or rendered insolvent as the result of the Transfer within the meaning of West Virginia Code § 40-1A-5(a).

46. At the time of each Transfer, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction within the meaning of West Virginia Code § 40-1A-4(a)(2)(i). At the time of each Transfer, the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of West Virginia Code § 40-1A-4(a)(2)(ii).

47. The Debtors are entitled to, and the Court should enter, judgment against Clearwater and avoiding each Transfer received by Clearwater pursuant to section 544 of the Bankruptcy Code and applicable West Virginia law.

48. Each Transfer can and should be avoided as to Clearwater and as to any subsequent transferee.

49. The Debtors are entitled to, and the Court should enter, judgment against Hoops avoiding each Transfer received by Hoops pursuant to section 544 of the Bankruptcy Code and applicable West Virginia law.

50. Each Transfer can and should be avoided as to Hoops and as to any subsequent transferee.

## COUNT FOUR
### (To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 544 and West Virginia Code § 40-1A-5(b) – Against Clearwater and Hoops)

51. The Debtors incorporate each and every allegation contained in paragraphs 1 through 50 of this Complaint as if fully rewritten herein.

52. In the alternative to Counts One through Three above, the Debtors assert that each Transfer other than those described in Paragraphs 36 and 38 above (each a "2019 Transfer" and sometimes collectively the "2019 Transfers") can and should be avoided pursuant to section 544 of the Bankruptcy Code and West Virginia Code § 40-1A-5(b). In the alternative to their allegations that the 2019 Transfers can and should be considered distributions on account of equity contributions, the Debtors allege that each of the 2019 Transfers is avoidable as a transfer made to an insider for an antecedent debt, while the Debtors were insolvent, and the insider had reasonable cause to believe that the Debtors were insolvent.

53. Clearwater is an insider for purposes of Debtors' claim under West Virginia Code § 40-1A-5(b), including but not limited to, based on its association with Hoops and his family. Clearwater knew the Debtors were insolvent at the time of the 2019 Transfers, including through the knowledge of Hoops. Clearwater had reasonable cause to believe that the Debtor were insolvent at the time of the 2019 Transfers.

54. Hoops is an insider for purposes of the Debtors' claim under West Virginia Code § 40-1A-5, including but not limited to, based on his status as director, officer, and beneficial owner of the Debtors. Hoops knew the Debtors were insolvent at the time of the 2019 Transfers.

55. In the alternative to Counts One through Three above, the Debtors are entitled to, and the Court should enter, judgment against Clearwater avoiding each 2019 Transfer received by Clearwater pursuant to section 544 of the Bankruptcy Code and West Virginia Code § 40-1A-5(b).

56. Each 2019 Transfer can and should be avoided as to Clearwater and as to any subsequent transferee.

57. In the alternative to Counts One through Three above, the Debtors are entitled to, and the Court should enter, judgment against Hoops avoiding each 2019 Transfer received by Hoops pursuant to section 544 of the Bankruptcy Code and West Virginia Code § 40-1A-5(b).

58. Each 2019 Transfer can and should be avoided as to Hoops and as to any subsequent transferee.

## COUNT FIVE
### (To Recover Avoided Transfers Under 11 U.S.C. § 550 – Against Clearwater and Hoops)

59. The Debtors incorporate each and every allegation contained in paragraphs 1 through 58 of this Complaint as if fully rewritten herein.

60. Clearwater and Hoops were the initial transferees for the Transfers at issue.

61. To the extent that the Transfers are avoided pursuant to sections 544 and 548 of the Bankruptcy Code, as requested herein, the Debtors are entitled to recover, for the benefit of their estates and creditors, the value of the avoided Transfers from Clearwater and Hoops, pursuant to section 550 of the Bankruptcy Code.

62. For purposes of the Transfers related to the Debtors' agreement to the Hoops-Riverstone Participation and the resulting security interest, the Court can and should order that payment to Hoops on account of the Hoops-Riverstone Participation was not entitled to secured treatment and that any payment to Hoops on account of the Hoops-Riverstone Participation be avoided, or in the alternative, be treated as an unsecured claim not yet eligible for payment. The Court can and should order that amounts held in the Court's registry related to the Hoops-Riverstone Participation be paid to the Debtors.

63. The Debtors are entitled to judgment against Clearwater in an amount not less than the amount of the avoided Transfers to Clearwater, plus pre- and post-judgment interest, attorneys' fees and costs pursuant to section 550 of the Bankruptcy Code.

64. The Debtors are entitled to judgment against Hoops in an amount not less than the amount of the avoided Transfers to Hoops, plus pre- and post-judgment interest, attorneys' fees and costs pursuant to section 550 of the Bankruptcy Code.

## COUNT SIX
### (For Declaratory Relief Regarding Preservation of Avoided Transfers and Disallowance of Claims by Clearwater and Hoops)

65. The Debtors incorporate each and every allegation contained in paragraphs 1 through 64 of this Complaint as if fully rewritten herein.

66. Pursuant to section 551 of the Bankruptcy Code, any transfer avoided under sections 544 or 548, among other things, is automatically preserved for the benefit of the debtor's estate with respect to property of the estate. Pursuant to section 541(a)(4) of the Bankruptcy Code, any property preserved for the benefit of the debtor's estate under section 551 of the Bankruptcy Code constitutes property of the debtor's estate.

67. Pursuant to section 502(d) of the Bankruptcy Code, any claim by an entity that is a transferee of transfer avoidable under sections 544 or 548 is disallowed unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

68. The Court can and should order and enter a declaratory judgment that the Transfers are automatically preserved for the benefit of the Debtors' estates and constitute property of the Debtors' estates, pursuant to sections 541(a)(4) and 551 of the Bankruptcy Code, including but not limited to, the funds in the Court registry related to the Hoops-Riverstone Participation. The Court

can and should order and enter a declaratory judgment that all claims by Clearwater against the Debtors are disallowed unless and until Clearwater has paid the amount of the Transfers to the Debtors.  The Court can and should order and enter a declaratory judgment that all claims by Hoops against the Debtors are disallowed unless and until Hoops has paid the amount of the Transfers to the Debtors.

## COUNT SEVEN
### (Breach of Fiduciary Duty – Against Hoops)

69. Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-68 of the Complaint.

70. Hoops owed fiduciary duties to Plaintiffs, including duties of care and loyalty. Consistent with these duties, Hoops was obligated to act in a disinterested, good faith, and independent manner to serve the best interests of Plaintiffs.  Hoops' duty of care to Plaintiffs required, among other things, Hoops to ensure that transactions involving Plaintiffs were fair to them and served their interests.

71. Hoops also had a duty of good faith and was required to exercise good faith in all of his dealings with and on behalf of the Plaintiffs, including with respect to any transactions between Plaintiffs and either Hoops or Clearwater.

72. Hoops breached his fiduciary duties and duty of good faith to Plaintiffs in connection with the dealings between Plaintiffs and himself and Plaintiffs and Clearwater regarding the 2019 "line of credit" transactions and repayments, the Hoops-Riverstone Participation, the Hoops-Riverstone Repayment, the 2017 LOC Payment, and, on information and belief, other unexplained and unauthorized transactions reflected in general ledger entries in the Debtors' accounting records (the "Self-Dealing Transactions").

73. Hoops breached his fiduciary duties by causing Plaintiffs to enter into the Self-Dealing Transactions and engage in these dealings with Hoops and Clearwater where the terms of Self-Dealing Transactions were unreasonable and unfair to Plaintiffs. Hoops breached his duty of loyalty by causing Plaintiffs to engage in the Self-Dealing Transactions in which Hoops had financial and other personal interests. Hoops also breached his fiduciary duties by failing to make proper, complete, or accurate disclosures regarding the Self-Dealing Transactions and by acting in a self-interested fashion.

74. On information and belief, Hoops caused the Self-Dealing Transactions to occur without receiving appropriate authorization based on full and accurate disclosure. On information and belief, none of the Self-Dealing Transactions were approved by disinterested members of the Board of Blackjewel or other Plaintiffs.

75. Hoops preferred Clearwater's and his own interests over the interests of Plaintiffs to which he owed fiduciary duties. Hoops' breaches were motivated by his personal financial and familial interests, including his desire to move assets beyond the reach of creditors, and was an intentional, willful, and wanton disregard of his fiduciary duties to Plaintiffs. Hoops conduct was undertaken maliciously for the purpose of injuring Plaintiffs by stripping them of valuable assets in order to enrich himself and his family members.

76. The unauthorized, unfair, and self-interested transactions between Plaintiffs and Hoops and Plaintiffs and Clearwater, including each of the Self-Dealing Transactions, should be deemed void.

77. As a direct and proximate result of Hoops' breaches of his fiduciary duties and duty of good faith, Plaintiffs have been damaged in an amount to be proven at trial, including the amount of the improper transfers to himself and Clearwater. In addition, because Hoops' conduct was

malicious, intentional, willful and wanton, Plaintiffs are entitled to and demand an award of punitive damages against him.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

(a) Avoiding each of the Transfers under sections 544 and 548 of the Bankruptcy Code and applicable West Virginia law, as requested herein;

(b) Ordering Clearwater to pay or otherwise turn over to Debtors the Transfers, or in the alternative, grant a money judgment against Clearwater in an amount not less than the total value of the Transfers made to Clearwater, together with pre- and post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961 from the earliest date allowed by law until the date of judgment or until paid or turned over in full, as applicable;

(c) Declaring that the Transfers are preserved for the benefit of the Debtors' estates and that all claims against the Debtors by Clearwater are disallowed unless and until Clearwater has turned over the Transfers made to Clearwater to Debtors or paid Debtors the value of the Transfers made to Clearwater;

(d) Ordering Hoops to pay or otherwise turn over to Debtors the Transfers, or in the alternative, grant a money judgment against Hoops in an amount not less than the total value of the Transfers made to Hoops, together with pre- and post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961 from the earliest date allowed by law until the date of judgment or until paid or turned over in full, as applicable;

(e) Declaring and ordering that the Transfers are preserved for the benefit of the Debtors' estates, including the amounts held in the Court's registry related to the Hoops-Riverstone participation, and that all claims against the Debtors by Hoops are disallowed unless and until Hoops has turned over the Transfers made to Hoops to Debtors or paid Debtors the value of the Transfers made to Hoops;

(f) On Count Seven, ordering that the Self-Dealing Transactions and the payments to Hoops and Clearwater related thereto, are void as unauthorized and improper self-dealing transactions, and awarding Plaintiffs a money judgment against Hoops and Clearwater in an amount to be determined at trial, including punitive damages, plus costs and attorneys' fees

(g) Awarding the Debtors' attorneys' fees and costs; and

(h) Granting any other and further relief that this Court deems just and equitable.

Dated: January 25, 2021 Respectfully submitted,

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple No. 8013
801 Viand St.
Point Pleasant, WV 25550
304-675-6249
joe.supple@supplelaw.net

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Scott A. Kane*
Stephen D. Lerner (admitted *pro hac vice*)
Scott A. Kane (admitted *pro hac vice*)
F. Maximilian Czernin (admitted *pro hac vice*)
Travis A. McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
scott.kane@squirepb.com
max.czernin@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel for the Debtors and
Debtors-in-Possession*