## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | Chapter 11 |
| BLACKJEWEL L.L.C., *et al.*,[1] | Case No. 19-30289 |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BLACKJEWEL L.L.C., BLACKJEWEL HOLDINGS L.L.C., REVELATION ENERGY HOLDINGS, LLC, REVELATION MANAGEMENT CORPORATION, REVELATION ENERGY, LLC, DOMINION COAL CORPORATION, HAROLD KEENE COAL CO. LLC, VANSANT COAL CORPORATION, LONE MOUNTAIN PROCESSING, LLC, POWELL MOUNTAIN ENERGY, LLC, and CUMBERLAND RIVER COAL LLC, | Chapter 11<br><br>Adversary Proceeding No. 20-03008 |
| Plaintiffs, | |
| vs. | |
| CLEARWATER INVESTMENT HOLDINGS, LLC, and JEFFERY A. HOOPS, SR., | |
| Defendants. | |

## ANSWER OF CLEARWATER INVESTMENT HOLDINGS, LLC AND JEFFERY A. HOOPS, SR. TO FIRST AMENDED ADVERSARY COMPLAINT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).  The headquarters for each of the Debtors is located at P.O. Box 1010, Scott Depot, West Virginia 25560.

Defendants Clearwater Investment Holdings, LLC ("<u>Clearwater</u>") and Jeffery A. Hoops, Sr. ("<u>Hoops</u>" and, together with Clearwater, the "<u>Defendants</u>"), by and through their undersigned counsel, hereby file this Answer (the "<u>Answer</u>") to Plaintiffs' First Amended Adversary Complaint (the "<u>Complaint</u>").  For their Answer, Defendants set forth Plaintiffs' allegation in each paragraph, followed by their answer to the allegations in each paragraph.

## <u>Nature of the Case</u>

1.  This is an action to avoid certain payments and transactions by Debtors as constructively fraudulent transfers pursuant to sections 544, 547, 548, and 550 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>") and applicable state law, to recharacterize certain payments ostensibly made for repayment of debt as improper equity distributions while the Debtors were insolvent, and for breach of fiduciary duty concerning such payments and transactions.

<u>**ANSWER:**</u>  The allegations of Paragraph 1 state legal conclusions to which no answer is required.  To the extent any response is required, Defendants admit that Plaintiffs filed the Complaint which seeks to recharacterize certain debt repayments made to Defendants or alternatively, avoid them as fraudulent transfers.  Defendants further admit that the Complaint alleges breach of fiduciary duty.  Defendants deny that Plaintiffs are entitled to any relief whatsoever, and specifically deny that any of the transactions were fraudulent or that any fiduciary duties were breached.

## <u>Jurisdiction and Venue</u>

2.  This adversary proceeding arises out of and is related to the above-captioned bankruptcy cases pending before the Court.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Plaintiffs consent to entry of final judgment in the Bankruptcy Court.

<u>**ANSWER:**</u>  The allegations of Paragraph 2 state legal conclusions and make statements about the Plaintiffs' consent to which no answer is required.  To the extent any response is required, Defendants admit that the Bankruptcy Court has jurisdiction over this matter and deny that

Plaintiffs are entitled to any judgment in their favor.  By way of further response, Defendants

likewise consent to entry of final judgment in the Bankruptcy Court.

## Parties

3.  Blackjewel L.L.C. ("Blackjewel") and the other Plaintiffs are debtors and debtors-in-possession in the above-captioned chapter 11 cases.  On July 1, 2019 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions in this Court.

**ANSWER:**  Defendants admit that Plaintiffs are debtors and debtors-in-possession in the above-

captioned chapter 11 cases.  Defendants further admit that certain of the Debtor entities filed

voluntary chapter 11 petitions in this Court on July 1, 2019.

4.  Hoops is a natural person and is the former President and Chief Executive Officer of Blackjewel.  Hoops was an officer and director of certain other of the Debtors at various times.

**ANSWER:**  Admitted.

5.  Clearwater is, on information and belief, a limited liability company whose members are Patricia A. Hoops and the Clearwater Trust ("CW Trust").  Patricia A. Hoops is Hoops' wife.  The CW Trust purports to be a trust created by Hoops for the benefit of himself and members of his family.  Hoops is a grantor and beneficiary of the CW Trust.  Hoops' family members are the other trustees of the CW Trust.

**ANSWER**:  Hoops denies that he is a beneficiary or a trustee of the CW Trust.  All other

allegations in Paragraph 5 are admitted.

## Allegations Common to All Claims

6.  The Debtors maintained accounts with United Bank.

**ANSWER**:  Admitted.

7.  Hoops and Clearwater also maintained various accounts at United Bank.

**ANSWER**:  Admitted.

8.  In the months preceding the Debtors' bankruptcy filings, the Debtors paid tens of millions of dollars to Clearwater and Hoops, including through transfers of funds between accounts maintained at United Bank.  On information and belief, based on an analysis of the records available to the Debtors, from January 1, 2019 until the Debtors'

bankruptcy filings in July of 2019, Clearwater received in excess of $34 million in payments from the Debtors.

**ANSWER**:  Defendants admit that they received several loan repayments in the months leading up to the Debtors' bankruptcy filings and that several such transfers involved accounts maintained at United Bank.  Defendants deny that Clearwater received in excess of $34 million in payments from the Debtors.

9. On information and belief, based on an analysis of the records available to the Debtors, from January 1, 2019 until the Debtors' bankruptcy filings in July 2019, Hoops received approximately $7.7 million in payments from the Debtors.

**ANSWER**:  Hoops admits that he received several loan repayments between January 1, 2019 and July 1, 2019.  Hoops denies that he received approximately $7.7 million in payments from the Debtors.

10. Hoops directed the payments between the Debtors and Clearwater.  Similarly, Hoops directed the payments between the Debtors and himself.

**ANSWER**:  Defendants deny the allegations in Paragraph 10.

11. Hoops and Clearwater contend that the payments by the Debtors to Hoops and Clearwater were repayments made pursuant to "revolving line[s] of credit" provided to the Debtors.  No loan agreements or other instruments exist establishing any such line of credit by Clearwater or Hoops to the Debtors.

**ANSWER**:  Defendants admit that the payments they received by the Debtors were repayments made pursuant to a revolving line of credit that they made available to the Debtors.  Defendants deny all remaining allegations in Paragraph 11.

12. Although amounts advanced by Clearwater and Hoops to the Debtors were sometimes referred to as loans, including in proceedings in the Debtors' bankruptcy cases shortly after the Petition Date while Hoops remained CEO, the label applied to the advances and to the transfers by Debtors to Clearwater and Hoops is not determinative of their proper treatment.  Based on the Debtors' analysis, and based on the substance of the transactions, the advances by Clearwater and Hoops were and should be considered equity contributions and the payments made by Debtors to Clearwater and Hoops were and should be considered distributions on account of equity.

**ANSWER**:  Defendants admit that the Plaintiffs have previously and correctly referred to the advances from Clearwater and Hoops as loans.  The remaining allegations of Paragraph 12 state legal conclusions to which no response is required.   To the extent a response is required, Defendants deny all remaining allegations of Paragraph 12.

13. There was no security for repayment of the amounts advanced by Clearwater or Hoops under the claimed lines of credit.

**ANSWER**:  Defendants admit that the loans made to Debtors in 2019 were made on an unsecured basis.  Defendants deny the remaining allegations of Paragraph 13, including any suggestion that there was not a line of credit between the Debtors and Hoops and/or Clearwater.

14. There was no fixed maturity date or schedule of repayments of the amounts advanced by Clearwater or Hoops to Debtors.

**ANSWER**:  Defendants admit that there was no fixed maturity date or schedule of repayments of the amounts advanced in 2019 by Clearwater or Hoops to Debtors.

15. The Debtors were inadequately capitalized at both the time of advances by Clearwater and Hoops and the time of the payments by the Debtors to Clearwater and Hoops.  The Debtors had no practical ability to obtain financing from outside lenders at both the time of the advances by Clearwater and Hoops and the time of the transfers by the Debtors to Clearwater and Hoops.

**ANSWER**:  Paragraph 15 contains a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 15 are denied.  Defendants further deny that the Debtors "had no practical ability" to obtain financing from outside lenders at the time of the transfers in question.

16. According to Hoops and Clearwater, advances under the claimed revolving lines of credit occurred because "no lenders were willing to provide any financing to Debtors." No independent third-party lender would make a loan to Debtors on terms consistent with the terms alleged to govern the advances made by Clearwater and Hoops.

**ANSWER**:  Paragraph 16 contains a quoted statement without providing any source or citation, and accordingly the Defendants deny the first sentence of Paragraph 16.  Defendants lack

knowledge as to whether any independent third-party lender would have made loans to the Debtors

on the same terms that governed the loans made by Hoops and/or Clearwater.

> 17. The Debtors had no clear source of repayment of amounts advanced by Clearwater and Hoops.  There was no specific fund or source of funds for such repayment.

**ANSWER**:  The allegations in Paragraph 17 are denied insofar as Debtors always contemplated

repaying, and did partially repay, loans made by Hoops and/or Clearwater from proceeds of the

Debtors' accounts receivable as and when such proceeds became available.

> 18. The Debtors were insolvent at the time of the transfers to Clearwater and Hoops regarding the claimed lines of credit.  At the time of the transfers to Clearwater and Hoops, the Debtors' assets were unreasonably small for the business in which they were engaged or would engage.  At the time of the transfers to Clearwater and Hoops, Hoops, Clearwater, and the Debtors either knew or reasonably should have believed that the Debtors would incur debts beyond Debtors' ability to pay as they became due.

**ANSWER**:  Paragraph 18 contains legal conclusions to which no response is required.  To the

extent a response is required, Defendants deny the allegations contained in Paragraph 18.

> 19. Hoops' direction of the Debtors' payments to Clearwater and himself under the foregoing circumstances was inequitable and improper.  The payment of tens of millions of dollars to Clearwater and to himself for distributions on account of equity are improper and harmed the Debtors and their ability to satisfy obligations to creditors. The Debtors are entitled to recover from Clearwater the approximately $34 million of pre-petition payments by Debtors to Clearwater.  Similarly the Debtors are entitled to recover from Hoops the approximately $7.7 million of pre-petition payments by the Debtors to Hoops.

**ANSWER**:  The allegations in Paragraph 19 are denied.  Any alleged inequity or impropriety

regarding the transfers at issue is specifically denied, and Defendants deny that Plaintiffs are

entitled to recover anything from Defendants.

> 20. On or around July 17, 2017, Blackjewel obtained a secured loan (the "July 2017 Loan") pursuant to a certain Credit Agreement, dated as of July 17, 2017 between Blackjewel, as borrowers, and certain lenders, with Riverstone Credit Partners – Direct, L.P. as agent, and related loan and security documents (the "Riverstone Facility").  The July 2017 Loan was in the original principal amount of $34 million but at least $3 million of that amount was not new money loaned to Blackjewel.

**ANSWER**:  Paragraph 20 purports to describe the terms of a written document, the best evidence of which is the document itself.  Defendants admit that Blackjewel entered into the Riverstone Facility but deny any allegation, description, or characterization inconsistent with the terms of the Riverstone Facility, which speaks for itself.

21. Rather, $3 million of the principal amount of the July 2017 Loan consisted of amounts that Hoops claimed to be owed by Blackjewel previously.  That alleged $3 million obligation was rolled into the July 2017 Loan made pursuant to the Riverstone Facility without Hoops providing any new funds or loan to Blackjewel (the "Hoops-Riverstone Participation").  Because the Hoops-Riverstone Participation was included in the July 2017 Loan, it was secured by various assets of Blackjewel as provided by the terms of the Riverstone Facility.  The effect of the Hoops-Riverstone Participation was to grant Hoops a security interest under the Riverstone Facility securing $3 million of alleged obligations to Hoops that were not previously secured pursuant to the terms of the Riverstone Facility.

**ANSWER**:  Paragraph 21 purports to describe the terms of a written document, the best evidence of which is the document itself.  Defendants deny any allegation, description, or characterization inconsistent with the terms of the Riverstone Facility, which speaks for itself.  Defendants specifically deny that the $3 million obligation to Hoops which was rolled up into the Riverstone Facility was previously an unsecured obligation.

22. Additionally, Hoops caused Blackjewel to pay him approximately $4,956,798 of the new funds from the July 2017 Loan related to amounts Hoops claimed to be owed for prior obligations (the "Hoops-Riverstone Payment").  The funds borrowed by Blackjewel to pay Hoops the Hoops-Riverstone Payment had the effect of creating a secured obligation for the amount of the Hoops-Riverstone Payment pursuant to the terms of the Riverstone Facility.

**ANSWER**:  Paragraph 22 purports to describe the terms of a written document, the best evidence of which is the document itself.  Defendants deny any allegation, description, or characterization inconsistent with the terms of the Riverstone Facility, which speaks for itself.  Hoops specifically denies any characterization that he "caused" Blackjewel to pay him anything pursuant to the

Riverstone Facility or that the obligations to Hoops paid pursuant to the Riverstone Facility were

previously unsecured obligations.

> 23. The Debtors repaid the July 2017 Loan subject to the right to challenge amounts
> ostensibly owed to Hoops for the Hoops-Riverstone Participation. The funds for
> repayment of the Hoops-Riverstone Participation remain on deposit in the Court's
> registry of funds and are subject to the continuing jurisdiction of the Court.

**ANSWER**:  Defendants admit that the funds for repayment of the so-called "Hoops-Riverstone

Participation" remain in the Court's registry.  Defendants deny that the Debtors have any valid

basis to challenge the repayment of these funds to Hoops.

> 24. On information and belief, Hoops received approximately $5.7 million from the
> Debtors in December of 2017 purportedly to repay funds advanced by him under a
> 2012 line of credit.  Debtors' ongoing investigation has not identified any written
> agreement regarding the 2012 line of credit or any documentation regarding the terms
> purportedly governing it.

**ANSWER**:  Defendants deny the allegations in Paragraph 24.  By way of further response, Hoops

received a repayment of $5,000,000 in December 2017 on account of $5,000,000 in short-term

loans made by Hoops to Blackjewel in the weeks prior to receiving the repayment.  Defendants

deny that any so-called "2012 line of credit" exists.

> 25. General ledger entries in the Debtors' accounting records suggest other financial
> transactions between Hoops and the Debtors for which there are either no or inadequate
> records to substantiate the nature or legitimacy of the transactions.

**ANSWER**:  Defendants lack knowledge sufficient to answer the allegations in Paragraph 25.  To

the extent a response is required, the allegations in Paragraph 25 are denied.

> 26. Debtors' records do not reflect disinterested approval or authorization for the $5.7
> [million] payment to Hoops in December 2017 or the other transactions suggested by
> the Debtors' accounting records.  Debtors' investigation has not identified documents
> where Hoops sought disinterested approval from the board of Blackjewel or any other
> Debtor for the self-dealing transactions in which he engaged.

**ANSWER**:  Defendants lack knowledge with respect to the current state of the Debtors' records

or the status of their investigation sufficient to answer the allegations in Paragraph 26.  To the

extent a response is required, the allegations in Paragraph 26 are denied.  By way of further response, Defendants specifically deny that the directors of Blackjewel Holdings L.L.C. did not approve of the transactions between Hoops and Blackjewel or between Clearwater and Blackjewel.

**COUNT ONE**
**(Recharacterization of Alleged Debt and**
**"Line of Credit" Payments to Clearwater and Hoops)**

27. The Debtors incorporate each and every allegation contained in paragraphs 1 through 26 of this Complaint as if fully rewritten herein.

**ANSWER**:  Defendants incorporate herein by reference their answers to Paragraphs 1-26.

28. The advances to the Debtors by Clearwater and Hoops in 2019 pursuant to purported lines of credit should properly be considered as, and in substance were, equity contributions rather than loans or advances of credit.  The payments by Debtors to Clearwater and Hoops should properly be considered as, and in substance were, improper distributions on account of equity rather than repayment of debt.

**ANSWER**:  The allegations in Paragraph 28 are denied as there is no basis to recharacterize the loans made by Clearwater and/or Hoops as equity contributions, or to recharacterize any payments made to Clearwater and/or Hoops pursuant to those loans as equity distributions.

29. On information and belief, the payment of approximately $5.7 million to Hoops in December 2017 purportedly on account of a 2012 line of credit (the "2017 LOC Payment") should properly be considered as, and in substance was, an improper distribution on account of equity rather than repayment of debt.  The absence of a written agreement for the 2012 line of credit to which the 2017 LOC Payment purportedly related, the absence of specific or definitive terms, and the lapse of time all indicate that the 2017 LOC Payment should properly be considered an equity distribution.

**ANSWER**:  Defendants deny all allegations in Paragraph 29.  By way of further response, Defendants specifically deny that $5.7 million was received in December 2017.  Rather, as previously noted, Hoops received a payment of $5 million in December 2017 on account of loans made to Blackjewel in the weeks prior—not pursuant to any supposed 2012 line of credit of which

Defendants are not aware.  Defendants deny that there is any basis to recharacterize this $5 million

payment to Hoops.

30. The Court has the power to recharacterize the advances made by Clearwater and Hoops to the Debtors under claimed but undocumented revolving lines of credit in 2019, as well as advances in connection with the 2017 LOC Payment, and to order that the advances and participation be treated as equity contributions, including but not limited to, pursuant to 11 U.S.C. § 105 and 11 U.S.C. § 726.  Likewise, the Court has the power to recharacterize the payments by Debtors to Clearwater and Hoops, including the payments in 2019 and the 2017 LOC Payment, and to order that they be treated as distributions on account of equity rather than repayment of debt.

**ANSWER**:  Paragraph 30 contains legal conclusions to which no response is required.  To the

extent a response is required, Defendants admit that bankruptcy courts have the power to

recharacterize as a general proposition under specific and narrow circumstances, but deny that

there is any basis to recharacterize any payments or advances by and between Blackjewel and

Hoops and/or Clearwater.

31. Recharacterization is appropriate under the facts and circumstances applicable to the advances by Clearwater and Hoops and repayments by the Debtors in 2019.  On information and belief, based on all the known facts and circumstances, recharacterization is appropriate for the 2017 LOC Payment.

**ANSWER**:  The allegations in Paragraph 31 are denied.  Defendants deny that Plaintiffs are

entitled to any relief whatsoever.

32. Under all the facts and circumstances, the Court should declare and otherwise order that amounts advanced by Clearwater and Hoops to Debtors in 2019 in substance were, and should be considered as, equity contributions.  Under all the facts and circumstances, the Court should declare and otherwise order that amounts paid by Debtors to Clearwater in 2019 in substance were, and should be considered as, distributions on account of equity and not repayment of debt.  On information and belief, based on all the known facts and circumstances, the Court should declare and otherwise order that the 2017 LOC Payment in substance was, and should be considered as, a distribution on account of equity and not repayment of debt.

**ANSWER**:  The allegations in Paragraph 32 are denied.  Defendants deny that Plaintiffs are

entitled to any relief whatsoever.

33. The payments by Debtors to Clearwater and Hoops for equity distributions were improper and are recoverable by the Debtors. The distributions were made at a time the Debtors were insolvent and were not able to pay their debts as they became due in the usual course of business. The Court can and should order Clearwater and Hoops to repay the amounts transferred by Debtors for repayment of the claimed but undocumented revolving lines of credit in 2019. The Court can, and on information and belief should, order Clearwater and Hoops to repay the 2017 LOC Payment.

**ANSWER:** Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 33. Defendants specifically deny that the Plaintiffs are entitled to any relief or that it would be appropriate for the Court to award the Plaintiffs any relief.

## COUNT TWO
## (To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 548 – Against Clearwater and Hoops)

34. The Debtors incorporate each and every allegation contained in Paragraphs 1 through 33 of this Complaint as if fully rewritten herein.

**ANSWER:** Defendants hereby incorporate by reference their answers to Paragraphs 1-33.

35. Each payment or transfer by the Debtors to Clearwater and Hoops on account of the claimed revolving lines of credit (each a "Transfer" and sometimes collectively the "Transfers") was a transfer of interest of the Debtors in property.

**ANSWER:** Paragraph 35 states a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 35 are denied.

36. The Debtors' agreement to the Hoops-Riverstone Participation and the resulting security interest were obligations incurred by the Debtors, which are included in the definition of "Transfer" and "Transfers" for purposes of the allegations of this Complaint.

**ANSWER:** Paragraph 36 states a legal conclusion to which no response is required. To the extent a response is required, the allegations of Paragraph 36 are denied.

37. The Debtors did not receive reasonably equivalent value for any of the Transfers. The payment Transfers were in substance, and should be considered, distributions to Clearwater and Hoops on account of equity and the Debtors did not receive value in exchange for such payments.

**ANSWER**:  Paragraph 37 states a legal conclusion to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 37.  Defendants specifically

deny that the Court should award Plaintiffs any relief whatsoever.

38. On information and belief, the Debtors did not receive reasonably equivalent value for
    the 2017 LOC Payment and it was in substance, and should be considered, a
    distribution to Hoops on account of equity.  Based on these allegations, the 2017 LOC
    Payment is included in the definition of "Transfer" and "Transfers" for purposes of the
    subsequent allegations of this Complaint.

**ANSWER**:  Paragraph 38 states a legal conclusion to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 38.  Defendants specifically

deny that the Court should award Plaintiffs any relief whatsoever.

39. At the time of each Transfer, the Debtors were:  (a) insolvent, or rendered insolvent as
    the result of the Transfer; (b) engaged in business or a transaction, or were about to
    engage in business or a transaction, for which the Debtors' remaining property was an
    unreasonably small capital; and/or (c) the Debtors intended to incur, or believed or
    reasonably should have believed that they would incur, debts that would be beyond
    their ability to pay as such debts matured.

**ANSWER**:  Paragraph 39 states legal conclusions to which no answer is required.  To the extent

a response is required, the allegations in Paragraph 39 are denied.

40. Each Transfer can and should be avoided as a constructively fraudulent transfer.  The
    Debtors are entitled to, and the Court should enter, judgment against Clearwater
    avoiding each Transfer received by Clearwater pursuant to section 548 of the
    Bankruptcy Code.  The Debtors are entitled to, and the Court should enter, judgment
    against Hoops avoiding each Transfer received by Hoops pursuant to section 548 of
    the Bankruptcy Code.

**ANSWER**:  Paragraph 40 contains legal conclusions to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 40.  Defendants specifically

deny that Plaintiffs are entitled to any relief whatsoever.

41. Each Transfer can and should be avoided as to Clearwater and as to any subsequent
    transferee.  Each Transfer can and should be avoided as to Hoops and as to any
    subsequent transferee.

**ANSWER**: Paragraph 41 contains legal conclusions to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 41.  Defendants specifically

deny that Plaintiffs are entitled to any relief whatsoever.

**COUNT THREE**
**(To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 544 and**
**the West Virginia Uniform Fraudulent Transfers Act – Against Clearwater and Hoops)**

42. The Debtors incorporate each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully rewritten herein.

**ANSWER**:  Defendants hereby incorporate by reference their answers to Paragraphs 1-41.

43. Each Transfer also can and should be avoided pursuant to section 544 of the Bankruptcy Code and applicable state law.  Pursuant to section 544(b) of the Bankruptcy Code, the Debtors (as debtors-in-possession) have the rights of existing unsecured creditors.  Section 544(b) permits the Debtors to assert claims and causes of action that such a creditor could assert under applicable state law.

**ANSWER**: Paragraph 43 contains legal conclusions to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 43.

44. Each of the Transfers can and should be avoided pursuant to West Virginia law. Debtors did not receive reasonably equivalent value for any of the Transfers.  The payment Transfers were in substance, and should be considered, distributions on account of equity contributions by Clearwater and Hoops and the Debtors did not receive value in exchange for such transfers.

**ANSWER**: Paragraph 44 contains legal conclusions to which no answer is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 44.

45. At the time of each Transfer, the Debtors were insolvent, or rendered insolvent as the result of the Transfer within the meaning of West Virginia Code § 40-1A-5(a).

**ANSWER**: Paragraph 45 contains legal conclusions to which no answer is required.  To the extent

a response is required, Defendants deny the allegation in Paragraph 45.

46. At the time of each Transfer, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction within the meaning of West

Virginia Code § 40-1A-4(a)(2)(i).  At the time of each Transfer, the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of West Virginia Code § 40-1A-4(a)(2)(ii).

**ANSWER**:  Paragraph 46 contains legal conclusions to which no answer is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 46.

47. The Debtors are entitled to, and the Court should enter, judgment against Clearwater and avoiding each Transfer received by Clearwater pursuant to section 544 of the Bankruptcy Code and applicable West Virginia law.

**ANSWER**:  The allegations in Paragraph 47 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 47 and deny that the Plaintiffs are entitled to any relief whatsoever.

48. Each Transfer can and should be avoided as to Clearwater and as to any subsequent transferee.

**ANSWER**:  The allegations in Paragraph 48 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 48 and deny that the Plaintiffs are entitled to any relief whatsoever.

49. The Debtors are entitled to, and the Court should enter, judgment against Hoops avoiding each Transfer received by Hoops pursuant to section 544 of the Bankruptcy Code and applicable West Virginia law.

**ANSWER**:  The allegations in Paragraph 49 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 49 and deny that the Plaintiffs are entitled to any relief whatsoever.

50. Each Transfer can and should be avoided as to Hoops and as to any subsequent transferee.

**ANSWER**:  The allegations in Paragraph 50 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegation in Paragraph 50 and deny that Plaintiffs are entitled to any relief whatsoever.

**COUNT FOUR**
**(To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 544**
**And West Virginia Code § 40-1A-5(b) – Against Clearwater and Hoops)**

51. The Debtors incorporate each and every allegation contained in paragraphs 1 through 50 of this Complaint as if fully rewritten herein.

**ANSWER**: Defendants hereby incorporate by reference their answers to Paragraphs 1-50.

52. In the alternative to Counts One through Three above, the Debtors assert that each Transfer other than those described in Paragraphs 36 through 38 above (each a "2019 Transfer" and sometimes collectively the "2019 Transfers") can and should be avoided pursuant to section 544 of the Bankruptcy Code and West Virginia Code § 40-1A-5(b). In the alternative to their allegations that the 2019 Transfers can and should be considered distributions on account of equity contributions, the Debtors allege that each of the 2019 Transfers is avoidable as a transfer made to an insider for an antecedent debt, while the Debtors were insolvent, and the insider had reasonable cause to believe that the Debtors were insolvent.

**ANSWER**: The allegations in Paragraph 52 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants deny the allegations in Paragraph 52.

53. Clearwater is an insider for purposes of Debtors' claim under West Virginia Code § 40-1A-5(b), including but not limited to, based on its association with Hoops and his family. Clearwater knew the Debtors were insolvent at the time of the 2019 Transfers, including through the knowledge of Hoops. Clearwater had reasonable cause to believe that the Debtor[s] were insolvent at the time of the 2019 Transfers.

**ANSWER**: The allegations in Paragraph 53 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants deny the allegations in Paragraph 53.

54. Hoops is an insider for purposes of the Debtor' claim under West Virginia Code § 40-1A-5, including but not limited to, based on his status as a director, officer, and beneficial owner of the Debtors. Hoops knew the Debtors were insolvent at the time of the 2019 Transfers.

**ANSWER**: The allegations in Paragraph 54 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants deny the allegations in Paragraph 54.

55. In the alternative to Counts One through Three above, the Debtors are entitled to, and the Court should enter, judgment against Clearwater avoiding each 2019 Transfer received by Clearwater pursuant to section 544 of the Bankruptcy Code and West Virginia Code § 40-1A-5(b).

**ANSWER**:  The allegations in Paragraph 55 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants deny the allegations in Paragraph 55 and deny

that the Plaintiffs are entitled to any relief whatsoever.

> 56. Each 2019 Transfer can and should be avoided as to Clearwater and as to any
> subsequent transferee.

**ANSWER**:  The allegations in Paragraph 56 state a legal conclusion to which no answer is

required.  To the extent any response is required, Defendants deny the allegations in Paragraph

56.

> 57. In the alternative to Counts One through Three above, the Debtors are entitled to, and
> the Court should enter, judgment against Hoops avoiding each 2019 Transfer received
> by Hoops pursuant to section 544 of the Bankruptcy Code and West Virginia Code §
> 40-1A-5(b).

**ANSWER**:  The allegations in Paragraph 57 state a legal conclusion to which no answer is

required.  To the extent any response is required, Defendants deny the allegations in Paragraph 57

and deny that Plaintiffs are entitled to any relief whatsoever.

> 58. Each 2019 Transfer can and should be avoided as to Hoops and as to any subsequent
> transferee.

**ANSWER**:  The allegations in Paragraph 58 state a legal conclusion to which no answer is

required.  To the extent any response is required, Defendants deny the allegations in Paragraph 58.

**COUNT FIVE**
**(To Recover Avoided Transfers Under 11 U.S.C. § 550 – Against Clearwater and Hoops)**

> 59. The Debtors incorporate each and every allegation contained in paragraphs 1 through
> 58 of this Complaint as if fully rewritten herein.

**ANSWER**:  Defendants hereby incorporate by reference their answers to Paragraphs 1-58.

> 60. Clearwater and Hoops were the initial transferees for the Transfers at issue.

**ANSWER**:  Paragraph 60 contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 60.

61. To the extent that the Transfers are avoided pursuant to sections 544 and 548 of the Bankruptcy Code, as requested herein, the Debtors are entitled to recover, for the benefit of their estates and creditors, the value of the avoided Transfers from Clearwater and Hoops, pursuant to section 550 of the Bankruptcy Code.

**ANSWER**:  The allegation in Paragraph 61 states a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegation in Paragraph 61 and deny the Plaintiffs are entitled to any relief whatsoever.

62. For purposes of the Transfers related to the Debtors' agreement to the Hoops-Riverstone Participation and the resulting security interest, the Court can and should order that payment to Hoops on account of the Hoops-Riverstone Participation was not entitled to secured treatment and that any payment to Hoops on account of the Hoops-Riverstone Participation be avoided, or in the alternative, be treated as an unsecured claim not yet eligible for payment.  The Court can and should order that amounts held in the Court's registry related to the Hoops-Riverstone Participation be paid to the Debtors.

**ANSWER**:  The allegations in Paragraph 62 state legal conclusions, to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 62 and deny that Plaintiffs are entitled to any relief whatsoever.

63. The Debtors are entitled to judgment against Clearwater in an amount not less than the amount of the avoided Transfers to Clearwater, plus pre- and post-judgment interest, attorneys' fees and costs pursuant to section 550 of the Bankruptcy Code.

**ANSWER**:  The allegations in Paragraph 63 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 63 and deny that Plaintiffs are entitled to any relief whatsoever.

64. The Debtors are entitled to judgment against Hoops in an amount not less than the amount of the avoided Transfers to Hoops, plus pre- and post-judgment interest, attorneys' fees and costs pursuant to section 550 of the Bankruptcy Code.

**ANSWER**:  The allegations in Paragraph 64 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 64 and deny that Plaintiffs are entitled to any relief whatsoever.

## COUNT SIX
### (For Declaratory Relief Regarding Preservation of Avoided Transfers and Disallowance of Claims by Clearwater and Hoops)

65. The Debtors incorporate each and every allegation contained in paragraphs 1 through 64 of this Complaint as if fully rewritten herein.

**ANSWER**:  Defendants hereby incorporate by reference their answers to Paragraphs 1-64.

66. Pursuant to section 551 of the Bankruptcy Code, any transfer avoided under sections 544 and 548, among other things, is automatically preserved for the benefit of the debtor's estate with respect to property of the estate.  Pursuant to section 541(a)(4) of the Bankruptcy Code, any property preserved for the benefit of the debtor's estate under section 551 of the Bankruptcy Code constitutes property of the debtor's estate.

**ANSWER**:  The allegations in Paragraph 66 contain legal conclusions to which no answer is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 66.

67. Pursuant to section 502(d) of the Bankruptcy Code, any claim by an entity that is a transferee of transfer avoidable under sections 544 or 548 is disallowed unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

**ANSWER**:  The allegations in Paragraph 67 state a legal conclusion to which no answer is required.  To the extent any response is required, Defendants deny the allegation in Paragraph 67.

68. The Court can and should order and enter a declaratory judgment that the Transfers are automatically preserved for the benefit of the Debtors' estates and constitute property of the Debtors' estates, pursuant to sections 541(a)(4) and 551 of the Bankruptcy Code, including but not limited to, the funds in the Court registry related to the Hoops-Riverstone Participation.  The Court can and should order and enter a declaratory judgment that all claims by Clearwater against the Debtors are disallowed unless and until Clearwater has paid the amount of the Transfers to the Debtors.  The Court can and should order and enter a declaratory judgment that all claims by Hoops against the Debtors are disallowed unless and until Hoops has paid the amount of the Transfers to the Debtors.

**ANSWER**:  The allegations in Paragraph 68 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants deny the allegations in Paragraph 68.

## COUNT SEVEN
### (Breach of Fiduciary Duty – Against Hoops)

69. Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-68 of the Complaint.

**ANSWER**:  Defendants hereby incorporate by reference their answers to Paragraphs 1-68.

70. Hoops owed fiduciary duties to Plaintiffs, including duties of care and loyalty. Consistent with these duties, Hoops was obligated to act in a disinterested, good faith, and independent manner to serve the best interests of Plaintiffs.  Hoops' duty of care to Plaintiffs required, among other things, Hoops to ensure that transactions involving Plaintiffs were fair to them and served their interests.

**ANSWER**:  The allegations in Paragraph 70 state legal conclusions to which no answer is required.

To the extent any response is required, Defendants admit that Hoops owed fiduciary duties to

certain Plaintiffs but deny that any such duties were breached and deny any suggestion by Plaintiffs

that any transactions between Defendants and Plaintiffs were unfair to Plaintiffs or otherwise did

not serve Plaintiffs' interests.

71. Hoops also had a duty of good faith and was required to exercise good faith in all of his dealings with and on behalf of the Plaintiffs, including with respect to any transactions between Plaintiffs and either Hoops or Clearwater.

**ANSWER**:  The allegations in Paragraph 71 contain legal conclusions to which no answer is

required.  To the extent a response is required, Defendants admit that Hoops owed fiduciary duties

to certain Plaintiffs but deny that any such duties were breached and deny any suggestion by

Plaintiffs that any transactions between Defendants and Plaintiffs were not undertaken in good

faith.

72. Hoops breached his fiduciary duties and duty of good faith to Plaintiffs in connection with the dealings between Plaintiffs and himself and Plaintiffs and Clearwater regarding the 2019 "line of credit" transactions and repayments, the Hoops-Riverstone Participation, the Hoops-Riverstone Repayment, the 2017 LOC Payment, and, on

information and belief, other unexplained and unauthorized transactions reflected in general ledger entries in the Debtors' accounting records (the "**Self-Dealing Transactions**").

**ANSWER**:  The allegations in Paragraph 72 contain legal conclusions to which no answer is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 72.

73. Hoops breached his fiduciary duties by causing Plaintiffs to enter into the Self-Dealing Transactions and engage in these dealings with Hoops and Clearwater where the terms of Self-Dealing Transactions were unreasonable and unfair to Plaintiffs.  Hoops breached his duty of loyalty by causing Plaintiffs to engage in the Self-Dealing Transactions in which Hoops had financial and other personal interests.  Hoops also breached his fiduciary duties by failing to make proper, complete, or accurate disclosures regarding the Self-Dealing Transactions and by acting in a self-interested fashion.

**ANSWER**:  The allegations in Paragraph 73 contain legal conclusions to which no answer is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 73 and further deny that Hoops "caused" Plaintiffs to enter into any transactions, and deny that any transactions between Defendants and Plaintiffs were not undertaken in good faith or were not sufficiently disclosed to members of Blackjewel Holdings L.L.C.'s board of directors.

74. On information and belief, Hoops caused the Self-Dealing Transactions to occur without receiving appropriate authorization based on full and accurate disclosure.  On information and belief, none of the Self-Dealing Transactions were approved by disinterested members of the Board of Blackjewel or other Plaintiffs.

**ANSWER**:  Defendants deny the allegations in Paragraph 74.  Defendants specifically deny that the transactions of which Plaintiffs complain were not disclosed or were not either expressly or impliedly approved by Blackjewel Holdings L.L.C.'s board members.

75. Hoops preferred Clearwater's and his own interests over the interests of Plaintiffs to which he owed fiduciary duties.  Hoops' breaches were motivated by his personal financial and familial interests, including his desire to move assets beyond the reach of creditors, and was an international, willful, and wanton disregard of his fiduciary duties to Plaintiffs.  Hoops' conduct was undertaken maliciously for the purpose of injuring Plaintiffs by stripping them of valuable assets in order to enrich himself and his family members.

**ANSWER**:  Defendants deny the allegations in Paragraph 75, and specifically deny that Hoops breached any fiduciary duties to Plaintiffs.

> 76. The unauthorized, unfair, and self-interested transactions between Plaintiffs and Hoops and Plaintiffs and Clearwater, including each of the Self-Dealing Transactions, should be deemed void.

**ANSWER**:  Paragraph 76 contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 76.

> 77. As a direct and proximate result of Hoops' breaches of his fiduciary duties and duty of good faith, Plaintiffs have been damaged in an amount to be proven at trial, including the amount of the improper transfers to himself and Clearwater.  In addition, because Hoops' conduct was malicious, intentional, willful and wanton, Plaintiffs are entitled to and demand an award of punitive damages against him.

**ANSWER**:  The allegations in Paraagraph 77 contain legal conclusions to which no answer is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 77.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

(a) Avoiding each of the Transfers under sections 544 and 548 of the Bankruptcy Code and applicable West Virginia law, as requested herein;

(b) Ordering Clearwater to pay or otherwise turn over to Debtors the Transfers, or in the alternative, grant a money judgment against Clearwater in an amount not less than the total value of the Transfers made to Clearwater, together with pre- and post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961 from the earliest date allowed by law until the date of judgment or until paid or turned over in full, as applicable;

(c) Declaring that the Transfers are preserved for the benefit of the Debtors' estates and that all claims against the Debtors by Clearwater are disallowed unless and until Clearwater has turned over the Transfers made to Clearwater to Debtors or paid Debtors the value of the Transfers made to Clearwater;

(d) Ordering Hoops to pay or otherwise turn over to Debtors the Transfers, or in the alternative, grant a money judgment against Hoops in an amount not less than the total value of the Transfers made to Hoops, together with pre- and post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961 from the earliest date

allowed by law until the date of judgment or until paid or turned over in full, as applicable;

(e)    Declaring and ordering that the Transfers are preserved for the benefit of the Debtors' estates, including the amounts held in the Court's registry related to the Hoops-Riverstone participation, and that all claims against the Debtors by Hoops are disallowed unless and until Hoops has turned over the Transfers made to Hoops to Debtors or paid Debtors the value of the Transfers made to Hoops;

(f)    On Count Seven, ordering that the Self-Dealing Transactions and the payments to Hoops and Clearwater related thereto, are void as unauthorized and improper self-dealing transactions, and awarding Plaintiffs a money judgment against Hoops and Clearwater in an amount to be determined at trial, including punitive damages, plus costs and attorneys' fees.

**ANSWER:** Defendants deny that Plaintiffs are entitled to any relief.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants set forth their affirmative defenses below. By setting forth these affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Moreover, nothing stated below is intended to be construed as an acknowledgment that any particular issue or subject matter is relevant. Defendants reserve their right to amend or supplement this Answer with additional defenses upon particularization of the claims by Plaintiffs, or upon further investigation or discovery of the facts related to this case.

## FIRST DEFENSE

Defendants' previous denials of the allegations contained in the Plaintiffs' Complaint are incorporated herein as if fully set forth.

## SECOND DEFENSE

The Plaintiffs' Complaint fails to state claims upon which relief may be granted against Defendants and therefore, the Complaint must be dismissed against Defendants.

## THIRD DEFENSE

The claims asserted in the Complaint, or some of them, are barred by the applicable statute of limitations.

## FOURTH DEFENSE

To the extent that Plaintiffs were damaged as alleged, which is denied, such damages were caused in whole, or in part, by the Plaintiffs' actions or inactions.

## FIFTH DEFENSE

To the extent that Plaintiffs were damaged as alleged, which is denied, Plaintiffs failed to mitigate such damages.

## SIXTH DEFENSE

To the extent that Plaintiffs were damaged as alleged, which is denied, such damages were caused or contributed to by the actions and/or inactions of persons and/or entities other than Defendants.

## SEVENTH DEFENSE

Plaintiffs' claims are barred by payment and release.

## EIGHTH DEFENSE

Plaintiffs have sustained no damages with respect to the events alleged in the Complaint.

## NINTH DEFENSE

Plaintiffs would be unjustly enriched if they were permitted to obtain any recovery in this action.

## TENTH DEFENSE

The claims asserted in the Complaint, or some of them, are caused by Plaintiffs' decisions that are completely unrelated to Defendants.

## ELEVENTH DEFENSE

Defendants assert the following affirmative defenses to Plaintiffs' claims for punitive damages:

1.     Plaintiffs' claim for punitive damages against Defendants cannot be sustained because an award of punitive damages under West Virginia law without proof of every element beyond a reasonable doubt would violate Defendants' due process rights under the Fourteenth Amendment of the United States Constitution;

2.     Alternatively, unless Defendants' liability for punitive damages and the appropriate amount for punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution;

3.     Plaintiffs' claim for punitive damages against Defendants cannot be sustained because any award of punitive damages under West Virginia law without bifurcating the trial of all punitive damages issues would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution;

4.     Plaintiffs' claim for punitive damages cannot be sustained because an award of punitive damages under West Virginia law for the purpose of compensating Plaintiffs for elements of damages not otherwise recognized by West Virginia law would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution;

5.     Any award of punitive damages based on anything other than Defendants' alleged conduct regarding the subject of this lawsuit would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Double Jeopardy Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment because any other judgment for

punitive damages in this case cannot protect Defendants against impermissible multiple punishment for the same alleged wrong;

9.      Alternatively, Defendants rely on the United States Supreme Court decision of State Farm v. Campbell, 123 S. Ct. 1513 (2003), as a bar to Plaintiffs' punitive damages claim.

## TWELFTH DEFENSE

To the extent Defendants received any of the alleged Transfers, as defined in the Complaint, Defendants took the Transfers for value in good faith and without knowledge of the voidability of the transfer.

## THIRTEENTH DEFENSE

Plaintiffs' Complaint alleges causes of action that are not recognized pursuant to West Virginia law and therefore, those causes of action must be dismissed.

## FOURTEENTH DEFENSE

At the time Defendants executed its agreements with Plaintiffs, Defendants believed that Plaintiffs were solvent.

## FIFTEENTH DEFENSE

No constructively fraudulent transfers exist under either 11 U.S.C. §544 or the West Virginia Uniform Fraudulent Transfers Act.

## SIXTEENTH DEFENSE

Plaintiffs have not satisfied the requisite elements to receive a declaratory judgment in their favor.

## SEVENTEENTH DEFENSE

To the extent Defendants received any all of the alleged Transfers, as defined in the Complaint, and the Transfers are avoided, Defendants are entitled to the statutory defenses as set out in section 550 of title 11 of the United States Code.

## EIGHTEENTH DEFENSE

To the extent Defendants received any of the alleged Transfers, as defined in the Complaint, and the Transfers are avoided, Defendants are entitled to the statutory defenses as set out in West Virginia Code §40-1A-8.

## NINETEENTH DEFENSE

Defendants, at all times relevant herein, acted in good faith and in compliance with the terms of the agreements by and between the parties.

## TWENTIETH DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## TWENTY-FIRST DEFENSE

Plaintiffs' claims are barred by accord and satisfaction.

## TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred and/or limited because the alleged damages are speculative and uncertain and because of the impossibility of ascertaining and allocating the alleged damages.

## TWENTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the terms of the relevant agreements by and between the parties.

## TWENTY-FOURTH DEFENSE

Defendants reserve their right to amend and/or to supplement this pleading to assert alternative and/or additional defenses.

**WHEREFORE**, Defendants pray for judgment as follows:

1.     That the Plaintiffs' Complaint be dismissed in its entirety with prejudice against

Defendants;

2.     That Plaintiffs take nothing thereby;

3.     That this honorable Court find that Plaintiffs are not entitled to pre-judgment or

post-judgment interest, punitive damages, reasonable attorneys' fees, court costs or

expenses; and

4.     For any and all other relief to which Defendants may appear to be entitled.

[signature page follows]

Dated:  March 5, 2021

Respectfully submitted,

**McGUIREWOODS LLP**

/s/ *Mark E. Freedlander*
Mark E. Freedlander, Esq.
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile:  (412) 667-6050
mfreedlander@mcguirewoods.com

K. Elizabeth Sieg, Esq.
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
bsieg@mcguirewoods.com

*Counsel to Defendants*

## Certificate of Service

I certify that on March 5, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of West Virginia on all those registered to receive electronic notice.  I further certify that I caused the foregoing document to be served via email on Plaintiffs' counsel as set forth below:

Stephen D. Lerner
Squire Patton Boggs (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202
stephen.lerner@squirepb.com

Scott A. Kane
Squire Patton Boggs (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202
scott.kane@squirepb.com

Joe M. Supple
Supple Law Office, PLLC
801 Viand Street
Point Pleasant, West Virginia 25550
joe.supple@supplelaw.net

*/s/ Mark E. Freedlander*
Mark E. Freedlander